Conda O. Richards and Nell P. Richards v. Commissioner.
Richards v. Commissioner
Docket No. 63873.
United States Tax Court
T.C. Memo 1959-205; 1959 Tax Ct. Memo LEXIS 41; 18 T.C.M. (CCH) 979; T.C.M. (RIA) 59205; 11 Oil & Gas Rep. 737; October 29, 1959
*41 A. E. Brooks, Esq., K. G. Tarlton, Esq., and W. Truett Smith, Esq., P.O. Box 960, San Angelo, Tex., for the petitioners. Douglas M. Moore, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax for the calendar year 1953 in the amount of $37,850.50. By amended petition the petitioners claim an overpayment of $12,985.06. The sole issue concerns the tax effect of a transaction involving gas and oil interests. The taxpayers filed a joint return for 1953 with the director of internal revenue at Dallas, Texas. Some facts are stipulated. Findings of Fact The stipulation is incorporated by reference. The petitioners, husband and wife, reside at Bronte, Texas. Conda H. Wylie and Edna Wylie are grandparents of Conda Odom Richards, and Nettie Currie is his great aunt. Prior to October 10, 1950, the Wylies owned a five-eighth mineral interest and Nettie Currie a three-eighth mineral interest in oil, gas and minerals in Gray Carrol Survey Nos. 283 and 284 in an area which became designated as the Fort Chadbourne Field of Coke and Runnels Counties, Texas. On October 10, 1950, the *42 Wylies and Nettie Currie conveyed an undivided one-fourth interest in the oil, gas and minerals in these surveys to Conda Odom Richards and L. A. Walker. Walker is a geologist formerly associated with Humble Oil & Refining Company, and is unrelated to the other parties. On the same date the parties entered into an agreement. Under the conveyance and agreement the grantors reserved the right for seven years to select, designate and cause wells to be drilled on the property, the grantees paid $3,200 in cash and agreed to pay $12,800 additional in annual installments of $1,600, secured by a lien on production and agreed to devote their time and attention to the operation of any oil and gas wells that might be put on production by the grantors, to keep records of production, make reports required by state or federal authorities, and to supervise drilling of such wells as the grantors might cause to be drilled. Oil was discovered on these surveys on November 29, 1950. The Wylies and Nettie Currie caused wells to be drilled on these surveys. Richards assisted in drilling the wells and operated them after they were on production. Production from these surveys continued without interruption *43 from November 29, 1950 to February 1, 1952. In December 1951, the Railroad Commission of Texas, after hearings, found that waste was occurring by the flaring of gas and ordered that all wells in the Fort Chadbourne Field be shut in effective February 1, 1952, until the operators showed the Commission that pressure maintenance either was not feasible or was being undertaken. Pursuant to this order the field was shut in on February 1, 1952. The operators in the field formed an engineering and geological committee which considered plans for recovery methods which would permit reopening the field. Wylie considered Walker uncooperative and wanted his interest bought out. Richards negotiated with Walker for acquisition of Walker's interest. On May 24, 1952, Walker and his wife conveyed to Richards an undivided one-eighth interest in the oil, gas and minerals in these surveys for $144,400 in cash and the assumption of one-half of the balance of $12,000 then outstanding on the contract of October 10, 1950, subject to all the reservations and conditions in the deed and contract of that date. Richards executed a deed of trust of an undivided one-eighth interest in this property to secure *44 his demand note for $144,400 given to C. H. Wylie, Edna Wylie and Nettie Currie for funds furnished to acquire the interest from Walker. A plan for unitization of the Fort Chadbourne Field was adopted in May 1953 under which Humble Oil & Refining Company was to be the unit operator. Under date of June 13, 1953, Humble wrote Conda H. Wylie, Edna Wylie, Nettie Currie and Conda O. Richards as follows, in part: "This letter will evidence the oral agreement between you jointly, who are hereinafter referred to as Lessor, and Humble Oil and Refining Company, hereinafter referred to as Humble, with reference to your interest as a working interest owner under the terms of the contracts hereinafter referred to in the unitized substances which may hereafter be produced from the Fort Chadbourne-Odom Lime Unit in Coke and Runnels Counties, Texas. "You have heretofore executed two certain agreements relating to the unitization and operation of said field, the first of said agreements being called Unitization Agreement, Fort Chadbourne Odom Lime Unit, a copy of which is hereto attached marked Exhibit 'A'; the second of said agreements being called Unit Operating Agreement, Fort Chadbourne *45 Odom Lime Unit, a copy of which is also hereto attached marked Exhibit 'B'. Reference is here made to said contracts for all purposes and it is agreed that the definitions contained in said contracts shall apply to all of the terminology of this letter of agreement. "You are the owners of Tract No. 27 as defined in Exhibit a' upon which you have heretofore drilled and completed eleven oil wells. The participating increments allocated to said tract under the terms of Exhibit 'A' are 47577, which entitles said tract under the terms of said Exhibit 'A' to 3.911408 per cent of the unitized substances produced from the unit area as the same is presently constituted. You have agreed, conditioned upon Exhibits 'A' and 'B' becoming effective as provided therein to convey and assign to Humble all of your rights to have, receive or be paid for all of the unitized substances allocated to said tract No. 27 under the terms of Exhibits 'A' and 'B', together with all of your undivided interest in the equipment in the wells and upon the land within the unit area, which is or may be used by unit operator for producing unitized substances therefrom. This conveyance, a copy of which is attached hereto *46 marked Exhibit 'C', which is incorporated herein by reference, is to be and remain effective so long, and only so long, as the unit created by Exhibits 'A' and 'B' shall remain in effect. "As the consideration for said conveyance and in further consideration of your agreement to pay all initial charges of every kind and character which may arise or result from, including said Tract No. 27 in the unit area as provided in Exhibits 'A' and 'B', Humble has agreed to convey and assign to you subject to the provisions of Exhibits 'A' and 'B' and conditioned upon said Exhibits becoming effective as therein provided, all of its rights to have, receive or be paid for all of the unitized substances allocated under the terms of Exhibit 'A' to certain locations within the unit area which are a part of tract one as defined in the Unitization Agreement. Payment for such unitized substances shall after the effective date of the Unitization Agreement be paid to you free of all costs of development and operation. Such interest shall be equal to 51696 participation encrements as defined in Exhibit 'A', this being the equivalent of 4.25 per cent of the unitized substances produced from the unit area *47 as the same is presently constituted. Such assignment and conveyance of such interest shall continue in effect so long, and only so long, as the Unitization Agreement remains in effect. A copy of the proposed assignment and conveyance is attached hereto marked Exhibit 'D' and incorporated herein by reference. "It is agreed and expressly provided that Humble shall succeed to all of your rights and obligations as a working interest owner under Exhibits 'A' and 'B' provided, however, that all rights of Lessor as working interest owners in the Unit Operating Agreement to take over any wells presently located, or which may hereafter be drilled upon Tract No. 27 as defined in Exhibit 'B', for the purpose of producing oil, gas or other minerals from any other producing horizon other than the Odom Lime as provided in Paragraph 33 of Exhibit 'B'; and all rights of Lessor as working interest owners to take over said wells upon the termination of Exhibit 'A' by reason of the fact that unitized substances can no longer be produced from the unit area in paying quantities, as provided in Paragraphs 32 (a) and (b), shall not pass by said conveyance and assignment but shall remain vested in Lessor *48 in the same manner as if this agreement had not been made and Lessor shall have the right to participate as a working interest owner in the event such contingencies arise." This letter was accepted and agreed to by the addressees. By instrument dated June 27, 1953, Richards as Grantor, conveyed a one-eighth interest in the oil, gas and other minerals in these surveys to C. H. Wylie, Edna Wylie and Nettie Currie, as Grantees, for $1.00 and the further consideration of "1. The assumption by the Grantees of all operating and production obligations, duties and responsibilities assumed by or imposed upon Conda Odom Richards and L. A. Walker in that certain Contract and Agreement dated October 10, 1950, executed by Nettie Currie, Edna Wylie and C. H. Wylie, as First Parties, and Conda Odom Richards and L. A. Walker as Second Parties, hereinafter referred to as Currie-Wylie and Richards-Walker Contract, which contract is recorded in Volume 249, page 517 of the Deed Records of Runnels County, Texas, reference to said Contract and Agreement and its record being here made for all purposes, it being intended that the interest in the oil, gas and other minerals owned and held by Grantor *49 after this conveyance shall be a free mineral interest without any exploration, drilling, development, production or operating obligations or duties of any nature, all such obligations and duties being hereby assumed by Grantees. "2. The release by Grantees of: "a. One-half (1/2) of the unpaid balance of Twelve Thousand Dollars ($12,000.00) due on that certain obligation originally in the sum of Twelve Thousand Eight Hundred Dollars ($12,800.00) owed by Grantor and L. A. Walker as more fully shown in said Currie-Wylie and Richards-Walker Contract, the payment of said obligation having been assumed by Conda Odom Richards by virtue of a certain Mineral Deed dated May 24, 1952, recorded in Volume 263, page 186, of the Deed Records of Runnels County, Texas, the unpaid balance still due and payable on said obligation after this conveyance being Six Thousand and no/100ths Dollars ($6,000.00). "b. One-half (1/2) of the unpaid balance of One Hundred Forty-four Thousand Four Hundred Dollars ($144,400.00) due on that certain note dated May 26, 1952, executed by Conda Odom Richards in the principal sum of $144,400.00 payable on demand to the order of Nettie Currie, Edna Wylie and C. H. *50 Wylie as more fully shown in that certain Deed of Trust recorded in Volume 61, page 104, Deed of Trust Records of said county, leaving after this conveyance an unpaid balance of Seventy-two Thousand Two Hundred Dollars ($72,200.00) still due on said note. "3. The execution and delivery of the conveyance by Grantor and the acceptance hereof by the Grantees shall: "a. Operate as a release of the above mentioned portions of the obligation and note and to the extent mentioned above said obligation and note are hereby declared to be fully paid and satisfied. "b. Operate as a release of all liens of whatever nature which were, are, or might be security for the payment of the above mentioned obligation and note, on the interest in the hereinafter described property hereby being conveyed and on the interest in the hereinafter described property owned by the Grantor not hereby conveyed, it being the intention of the parties hereto that the remaining balance of Six Thousand and no/100th Dollars ($6,000.00) due on said obligation and the Seventy-Two Thousand Two Hundred Dollars ($72,200.00) due on said note shall be and are a personal obligation of the Grantor and is, in no manner, secured *51 by any lien of whatever nature on any interest, whether hereby conveyed or retained on the hereinafter described property." At the time of this conveyance there were eleven producing wells on these surveys and one dry hole which had been plugged and abandoned in November 1952. The unitization agreement incorporated as Tract 27 all of Gray Carrol Survey 284 and all of Survey 283, except 98 acres which contained the dry hole. The unitization agreement became effective on August 1, 1953. In September 1953, Richards and Nettie Currie and the Wylies executed an agreement, later recorded, describing their respective interests in Surveys 283 and 284 and stating that Richards owns an undivided one-eighth interest in and to all the oil, gas and other minerals in and under and that may be produced from such surveys and the other parties a seven-eighth interest, with title of all parties subject to the unitization agreement, and that if and when any of the substances may cease to be subject to the unitization agreement, Richards shall be entitled to a free royalty interest of one-eighth, the other parties to receive seven-eighths with their interest charged with all costs of exploration, *52 development and production. Similar provision was made as to minerals not subject to the unitization agreement. The cost basis of Richards in the one-fourth undivided interest, including the one-eighth acquired in 1950 and the one-eighth acquired from Walker in 1952 is: Cost of 1/8 acquired 1950 recovered
by depletion
Cost of Walker's interest
$150,400.00
Less depletion allowed
16,843.29
Net total
$133,556.71
One-half into account
66,778.36
Plus adjusted basis in tool house
606.60
Net cost basis
$ 67,384.96
The value of the release of the obligation of Richards to operate the wells after August 1, 1953, was zero. Opinion The petitioners contend that the transfer of June 1953 effective August 1, 1953 from Richards to the Wylies and Nettie Currie was a sale of a mineral interest in which they had a loss of $44,264.65 for tax purposes and a net loss over the income of $34,416.18 reported on their return and that they are entitled to a refund of the tax paid for 1953. The respondent contends that this conveyance was in substance and in fact a leasing type transaction and that $78,200 (less $606.60) received by Richards was advance royalty taxable *53 to the petitioners as ordinary income subject to percentage depletion in the amount of $21,338.19. The argument is that Richards owned a working interest of two-eighths and conveyed all of his interest except a one-eighth royalty interest which he reserved, that he acquired contractual rights enforceable against the grantees requiring reasonable development and exploration of the minerals without cost to him, as the grantees assumed all the operating burdens and obligations which previously had rested on Richards. The evidence supports the petitioners' contention that the transfer in 1953 was a sale of a mineral interest. Wylie and his associates wanted to buy out Walker's interest. When Wylie was unable to do this by negotiating directly with Walker, Richards succeeded in arranging to buy Walker's interest with money furnished by Wylie. Richards held a one-fourth interest for a time. Later when the unitization plan was about to go into effect Richards conveyed a one-eighth interest to the Wylies and Nettie Currie, the original grantors. The deed conveys "an undivided one-eighth interest in and to all the oil, gas and other minerals in and under and that may be produced from" the *54 specified lands. A conveyance of minerals absolute in form may be held to be a lease where that is the actual substance of the transaction. affd. (C.A. 5, 1945) certiorari denied . This follows if the principal purpose of the transaction is to secure the development and exploitation of the property for the minerals. That is not the situation or the purpose here. This property was fully developed and no new drilling was in contemplation. The grantees owned the surface and three-fourths of the minerals and needed no further conveyance of rights to explore. The operating burden had been assumed by Humble under other contracts and was not a principal purpose of this transfer. This conveyance does not contain provisions generally found in mineral leases. It does not provide that the property is leased or let for the purpose of exploring or drilling for oil and gas. It specifies no term of years or rate of rental or royalty, and does not provide for forfeiture in case of failure to drill within a stated time limit. It calls for one payment only and no subsequent payments are indicated. *55 Prior to the deed, Wylie had the drilling obligation; Richards was charged with the duty of operating. But Humble took over both these duties under the unitization plan, which called for operations by gas injection methods. Richards reserved no further payments of any kind relating to the one-eighth interest conveyed by this deed, as the respondent argues. Both Wylie and Richards testified that the conveyance was not intended as a lease. We conclude that the transaction was a sale and not a lease. See affd. (C.A. 8, 1958); . The question is raised whether the effect of the transaction was to convey the interest acquired from Walker or one-half of the one-fourth interest owned by Richards at the time. The basis is stipulated differently depending upon which interest was conveyed. Both Wylie and Richards said that the intention was to transfer the Walker interest. This would imply that Richards was acting as Wylie's agent to buy out Walker and later turn over to Wylie the interest acquired by Richards from Walker. But the financial aspects of the transaction do *56 not bear this out. Richards and Walker originally acquired the one-fourth interest for $3,200 cash and a debt of $12,800 on which $800 was later paid. Richards owned half of this interest. To buy out Walker, Richards paid $144,400 in cash and assumed $6,000 of the debt owed by Walker. As it appears to us, if Richards was serving as Wylie's agent, he should have been reimbursed to this extent when he transferred the interest to the original grantors. But he received credit for $6,000 on the debt and only for $72,200 or half, on the note he had signed for funds to buy the interest. His part in acquiring and transferring the interest left him owing a substantial additional amount. From this we conclude that what he transferred on June 27, 1953 to the Wylies and Nettie Currie was one-half of the one-fourth interest which he had owned, and not the interest which he had acquired from Walker, as such. It is stipulated that the cost basis of the transferred half of the entire one-fourth interest at the time of the 1953 conveyance was $67,384.96 and that the consideration received was $78,200, plus the value, if any, of the release of operating obligations incurred under the contract of October 10, 1950, which *57 value is in dispute. Under the unitization agreement Humble took over the entire operating burden as to the producing horizon. The testimony is that there was no other horizon capable of producing oil. Under the circumstances the release of Richards from this obligation had no value and we have so found. The petitioners realized long-term capital gain from this transaction which can be recomputed under Rule 50. Decision will be entered under Rule 50.